TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
MACK E. JENKINS (Cal. Bar No. 242101)
Assistant United States Attorney
Chief, Public Corruption and Civil Rights Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2091
     Facsimile: (213) 894-3646
     E-mail:    mack.jenkins@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 2:21-MJ-3402 |
|---|---|
| Plaintiff, | GOVERNMENT'S NOTICE OF REQUEST FOR DETENTION; EXHIBIT A |
| v. | |
| THOMAS JOSEPH BARRACK, | |
| Defendant. | |

Plaintiff, United States of America, by and through its counsel of record, hereby requests detention of defendant, attaches a Detention Letter from the Eastern District of New York[1], and gives notice of the following material factors:

☐ 1.   Temporary 10-day Detention Requested (§ 3142(d)) on the
       following grounds:
   ☐ a.   present offense committed while defendant was on release
          pending (felony trial),

---
[1] Attached as Exhibit A.

☐ b.  defendant is an alien not lawfully admitted for permanent residence; and

☐ c.  defendant may flee; or

☐ d.  pose a danger to another or the community.

☒ 2.  Pretrial Detention Requested (§ 3142(e)) because no condition or combination of conditions will reasonably assure:

    ☒ a.  the appearance of the defendant as required;

    ☐ b.  safety of any other person and the community.

☐ 3.  Detention Requested Pending Supervised Release/Probation Revocation Hearing (Rules 32.1(a)(6), 46(d), and 18 U.S.C. § 3143(a)):

    ☐ a.  defendant cannot establish by clear and convincing evidence that he/she will not pose a danger to any other person or to the community;

    ☐ b.  defendant cannot establish by clear and convincing evidence that he/she will not flee.

☐ 4.  Presumptions Applicable to Pretrial Detention (18 U.S.C. § 3142(e)):

    ☐ a.  Title 21 or Maritime Drug Law Enforcement Act ("MDLEA") (46 U.S.C. App. 1901 et seq.) offense with 10-year or greater maximum penalty (presumption of danger to community and flight risk);

    ☐ b.  offense under 18 U.S.C. §§ 924(c), 956(a), 2332b, or 2332b(g)(5)(B) with 10-year or greater maximum penalty (presumption of danger to community and flight risk);

|   |   |    |     |
|---|---|----|-----|
| 1 | ☐ | c. | offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1)-(a)(3), 2252A(a)(1)-2252A(a)(4), 2260, 2421, 2422, 2423 or 2425 (presumption of danger to community and flight risk); |
|   | ☐ | d. | defendant currently charged with an offense described in paragraph 5a - 5e below, AND defendant was previously convicted of an offense described in paragraph 5a - 5e below (whether Federal or State/local), AND that previous offense was committed while defendant was on release pending trial, AND the current offense was committed within five years of conviction or release from prison on the above-described previous conviction (presumption of danger to community). |
|   | ☒ | 5. | **Government Is Entitled to Detention Hearing Under § 3142(f) If the Case Involves:** |
|   | ☐ | a. | a crime of violence (as defined in 18 U.S.C. § 3156(a)(4)), a violation of 18 U.S.C. § 1591, or Federal crime of terrorism (as defined in 18 U.S.C. § 2332b(g)(5)(B)) for which maximum sentence is 10 years' imprisonment or more; |
|   | ☐ | b. | an offense for which maximum sentence is life imprisonment or death; |
|   | ☐ | c. | Title 21 or MDLEA offense for which maximum sentence is 10 years' imprisonment or more; |

3

☐ d. any felony if defendant has two or more convictions for a crime set forth in a-c above or for an offense under state or local law that would qualify under a, b, or c if federal jurisdiction were present, or a combination or such offenses;

☐ e. any felony not otherwise a crime of violence that involves a minor victim or the possession or use of a firearm or destructive device (as defined in 18 U.S.C. § 921), or any other dangerous weapon, or involves a failure to register under 18 U.S.C. § 2250;

☒ f. serious risk defendant will flee;

☒ g. serious risk defendant will (obstruct or attempt to obstruct justice) or (threaten, injure, or intimidate prospective witness or juror, or attempt to do so).

☐ 6. Government requests continuance of _____ days for detention hearing under § 3142(f) and based upon the following reason(s):

_____

_____

_____

//
//
//
//
//
//
//

4

☐   7.   Good cause for continuance in excess of three days exists in that:

_____

_____

_____

_____

Dated: July 20, 2021          Respectfully submitted,

                              TRACY L. WILKISON
                              Acting United States Attorney

                              SCOTT M. GARRINGER
                              Assistant United States Attorney
                              Chief, Criminal Division

                              /s/ Mack Jenkins
                              _____
                              MACK E. JENKINS
                              Assistant United States Attorney

                              Attorneys for Plaintiff
                              UNITED STATES OF AMERICA

# EXHIBIT A



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| SPN:HDM/RCH/NDR | *271 Cadman Plaza East* |
| F. #2018R01309 | *Brooklyn, New York 11201* |

July 20, 2021

By ECF

The Honorable Patricia Donahue
United States Magistrate Judge
Central District of California
255 East Temple Street
Los Angeles, California 90012

        Re:    United States v. Thomas Joseph Barrack
                Criminal Docket No. 21-371 (BMC) (E.D.N.Y.)

Dear Judge Donahue:

        The government respectfully submits this letter to request that the Court order the defendant Thomas Joseph Barrack removed in custody to the Eastern District of New York. A grand jury has returned an indictment charging the defendant with acting as an unregistered foreign agent of the United Arab Emirates ("UAE"), conspiring with others to act as an unregistered foreign agent, obstruction of justice, and making false statements to special agents of the Federal Bureau of Investigation ("FBI"). As set forth more fully below, the defendant, an extremely wealthy and powerful individual with substantial ties to Lebanon, the UAE, and the Kingdom of Saudi Arabia ("KSA"), poses a serious flight risk based upon: (1) the seriousness of the charged offenses and the overwhelming evidence of his guilt; (2) the defendant's vast financial resources and access to a private aircraft on which he regularly travels internationally; and (3) the defendant's deep and longstanding ties to countries that do not have extradition treaties with the United States. See 18 U.S.C. § 3142.

        Once in the Eastern District of New York, the defendant will receive a full bail hearing, at which time the defendant may attempt to propose a combination of conditions of release that, if imposed, would reasonably assure the defendant's continued appearance at future court proceedings. In the government's view, however, any such combination of conditions would have to include, at a minimum, disclosure of the full scope of the defendant's foreign ties and assets; multiple appropriate domestic sureties; the posting of substantial and meaningful assets, including personal assets of those domestic sureties; GPS location monitoring; and strict temporal and geographic limits on the defendant's movement, including surrender of all passports and a bar on the defendant's access to his (or any other) private aircraft. In the event that the defendant were to propose such a combination of conditions of release, the government, the United States Pretrial Services Agency ("Pretrial Services"), and, ultimately, United States

District Judge Brian M. Cogan would need time, in advance of the defendant's release, to vet the proposed sureties and assets and to ensure perfection of the bond security, and Pretrial Services would need time to implement GPS location monitoring and travel restrictions. Accordingly, the government respectfully requests that the Court order the defendant removed in custody to the Eastern District of New York.

I. Background

On July 16, 2021, a grand jury sitting in the Eastern District of New York returned a seven-count indictment (the "Indictment") charging the defendant and two co-defendants with: (i) one count of acting as an unregistered agent of a foreign government, in violation of Title 18, United States Code, Sections 951(a) and 2; and (ii) one count of conspiracy to act as an unregistered agent of a foreign government, in violation of Title 18, United States Code, Section 371. The defendant was also charged with: (i) one count of obstruction of justice, in violation of Title 18, United States Code, Section 1512(c)(2); and (ii) four counts of making material false statements, in violation of Title 18, United States Code, Section 1001(a)(2).

The Indictment charges that between approximately April 2016 and April 2018, the defendant, along with his co-defendants Matthew Grimes ("Grimes") and Rashid Sultan Rashid Al Malik Alshahhi ("Al Malik"), acted in the United States as unregistered agents of the UAE to influence: (1) the foreign policy positions of the campaign of a candidate (the "Candidate") in the 2016 United States Presidential Election (the "Campaign"); (2) the incoming administration of the Candidate following the election (the "Administration"); and (3) media coverage and public perception of the UAE and its close ally, the KSA. As part of this covert foreign influence campaign, the defendant and Al Malik met, variously, with high-level UAE and KSA leaders on multiple occasions, including in May 2016, August 2016, and December 2016. At the UAE's direction, the defendant downloaded an encrypted communications platform to a mobile telephone that the defendant and Grimes purchased expressly for the purpose of communicating directly and securely with the UAE leadership. The defendant promoted UAE-favored policy positions in the Campaign, in the Administration, and through the media, at times using specific language provided by UAE leadership. The defendant advised Al Malik to create a "wish list" of policy achievements that the UAE wanted to occur within the first 100 days, the first six months, the first year, and the first four years of the Administration, which Al Malik completed after receiving input from UAE leadership. Among other accomplishments for the UAE's benefit, the defendant: (i) inserted UAE-favored language into speeches delivered by the Candidate; (ii) directly lobbied the Administration to forego a Camp David meeting between the State of Qatar ("Qatar"), the KSA, and the UAE during a multinational blockade of Qatar; (iii) arranged meetings and calls between UAE leaders and influential members of the Campaign and Administration; and (iv) promoted the UAE leadership, at times based on talking points supplied by the UAE government, in multiple televised media appearances and an Op-Ed article.

## II. The Substantial Risk of Flight

### A. Applicable Law

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. 18 U.S.C. § 3142(e) (detention warranted where "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community"). A risk of flight need only be established "by a clear preponderance of the evidence, not by the higher standard of clear and convincing evidence." United States v. Motamedi, 767 F.2d 1403, 1406 (9th Cir. 1985); United States v. Qazi, No. 17-10478, 2018 WL 841667, at *1 (9th Cir. Feb. 12, 2018) (same); United States v. Eng, 629 F.3d 311, 319 (2d Cir. 2011) (same); United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987) (same).

The Bail Reform Act lists the following four factors as relevant to the determination of whether detention is appropriate: (1) the nature and circumstances of the crimes charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the seriousness of the danger posed by the defendant's release. See 18 U.S.C. § 3142(g).

Evidentiary rules do not apply at detention hearings, and, among other means, "the government may proceed in a detention hearing by proffer or hearsay." United States v. Winsor, 785 F.2d 755, 756 (9th Cir. 1986); see also 18 U.S.C. § 3142(f)(2); United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (government entitled to proceed by proffer in detention hearings). Indeed, 18 U.S.C. § 3142(f)(2)(B) expressly states that the Federal Rules of Evidence do not apply at bail hearings. See id. ("The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing.").

### B. Discussion

#### 1. The Seriousness of the Charged Crimes and the Overwhelming Evidence of the Defendant's Guilt

The defendant is charged with extremely serious offenses based on conduct that strikes at the very heart of our democracy. The defendant is alleged to have capitalized on his position of significant influence as an outside advisor to the Campaign and the Administration and as a national media figure with regularly televised interviews on major news networks to further the interests of the UAE as directed by senior UAE officials and their intermediaries. Through the defendant's considerable access and influence, the UAE was able to broadcast its talking points to a national audience and promote its foreign policy interests with senior United States government officials.

As set forth in the Indictment, the defendant not only repeatedly agreed to promote the UAE's foreign policy interests through his unique access and influence, he also provided UAE government officials, through Al Malik, with sensitive non-public information

3

about developments within the Administration, including information about the positions of multiple senior United States government officials with respect to the Qatari blockade conducted by the UAE and other Middle Eastern countries. Worse, in his communications with Al Malik, the defendant framed his efforts to obtain an official position within the Administration as one that would enable him to further advance the interests of the UAE, rather than the interests of the United States. When the defendant sought a position as either U.S. Ambassador to the UAE or Special Envoy to the Middle East, he advised Al Malik that any such appointment "would give ABU DHABI more power!" Al Malik concurred that, if the defendant successfully obtained an appointment to such an official position, it would make the defendant "deliver more" for the UAE, making their efforts a "[v]ery effective operation." The defendant agreed.

The defendant never registered as an agent of the UAE, as public disclosure of his agreement to act at the direction of senior UAE officials would have diminished, if not eliminated, the access and influence that the UAE sought and valued. Moreover, the evidence demonstrates that the defendant repeatedly acted to conceal his actions on behalf of the UAE and those of his co-defendants, including Al Malik. Indeed, in June 2017, the defendant completed and submitted paperwork to the U.S. Department of State in connection with his efforts to secure an official position in the Administration. In his submissions, the defendant materially misrepresented his connection to Al Malik, falsely claiming to have had only infrequent contact with Al Malik and further claiming that he did not know Al Malik's citizenship or whether Al Malik was affiliated with a foreign government, despite describing Al Malik in private communications as the UAE's "secret weapon." Further, in his submissions to the U.S. Department of State, the defendant was required to report any occasions when he had been asked to provide advice, serve as a consultant, even informally, or otherwise work on behalf of a foreign government. The defendant failed to disclose his extensive activities on behalf of the UAE.

Two years later, in an interview with FBI special agents, the defendant continued to try to conceal his actions at the behest of the UAE by repeatedly lying during that interview. Among other things, the defendant falsely denied: (1) writing a draft of a speech to be delivered by the Candidate in May 2016; (2) reviewing a PowerPoint presentation to be delivered to senior UAE officials on how to increase the UAE's influence in the United States with his assistance; (3) agreeing to download a secure messaging application on a dedicated telephone to communicate directly with the UAE leadership at its request; (4) agreeing to arrange meetings and telephone calls between senior UAE officials and the President-Elect; (5) having a role in a senior Administration official's agreement to meet with a senior UAE official; and (6) ever having been asked by Al Malik to take steps for the benefit of the UAE. The defendant's repeated efforts to conceal his conduct reveal not only his consciousness of guilt, but also a repeated willingness to disregard the law, even when he learned of the government's criminal investigation. These characteristics weigh further in favor of the defendant's removal in custody to the Eastern District of New York.

Moreover, the evidence of the defendant's guilt in this case is overwhelming. The defendant's actions during the relevant time period are heavily documented and corroborated in thousands of emails, text messages, iCloud records, flight records, social media records, photographs, video recordings, and other types of evidence, all of which capture his agreement to

4

take direction from UAE government officials, his activities on their behalf, and his communications with those UAE government officials and his co-conspirators.

        2.      The Defendant's Vast Financial Resources and Extensive International Travel

In addition to the seriousness of the charged crimes and the strength of the evidence, the defendant poses a significant risk of flight due to his vast financial resources, access to private aircraft, and extensive international travel. Specifically, until his resignation in July 2019, the defendant served as the Executive Chairman of Colony Capital, a global investment management firm headquartered in Los Angeles with more than $40 billion under management. Public source reporting has repeatedly covered the defendant's significant financial holdings. For example, Forbes, a global media company, estimated the defendant's net worth as of March 26, 2013 at $1 billion. See "#1342 Thomas Barrack," Forbes, https://www.forbes.com/profile/ thomas-barrack/?sh=f989ee521c84 (last visited July 19, 2021). The defendant's vast wealth in the United States is reflected in his ownership of multiple multi-million dollar residences in the United States and his ready access to a private aircraft, which he uses frequently.

The defendant has used his private aircraft to engage in extensive international travel in recent years. Flight records reflect that, in the past five years, the defendant, using his private aircraft, has taken more than 75 international trips, or more than 15 per year. If the defendant were released from custody without the appropriate restrictions in place, he could easily use his private aircraft to flee the United States.

In addition, it is the government's understanding that the defendant has not yet disclosed to Pretrial Services the full extent of his foreign-based assets and property, which assets could be used not only to facilitate the defendant's flight from prosecution, but also to allow him to live comfortably as a fugitive for many years to come. In short, there is no doubt that the defendant's vast financial resources and access to private aircraft give him all the necessary means to flee from justice, now that he is facing extremely serious criminal charges supported by overwhelming evidence.

        3.      The Defendant's Extensive Ties to Countries that Do Not Extradite to the United States

Equally concerning are the defendant's significant connections to foreign countries that do not have extradition treaties with the United States. For example, the defendant is a citizen of Lebanon, a country that does not have an extradition treaty with the United States, and he visited Lebanon as recently as July 2020. In addition, the defendant is charged with acting under the direction or control of the most senior leaders of the UAE over a course of years. Notably, the defendant traveled to the UAE as recently as March 2021 via his private aircraft. The evidence further reflects that, at the direction of the UAE leadership, the defendant met with and assisted senior leaders of the KSA, a close ally of the UAE. Neither the UAE nor the KSA have extradition treaties with the United States. If the defendant were to successfully flee aboard his private aircraft to either of these two countries, he would potentially have the assistance of their highest leaders, virtually ensuring that the defendant would never face justice

in the United States. Notably, the risk of flight in this case is not merely theoretical: in April 2018, Al Malik, the defendant's co-defendant who primarily resided in Los Angeles, California for years, was interviewed by law enforcement concerning some of the conduct that forms the basis for the Indictment. Three days after that interview, Al Malik fled the United States and, to date, has not returned.

The defendant's connections to the senior leadership of multiple countries that do not have extradition treaties with the United States, considered in conjunction with the other bail factors, present an unacceptable risk of flight were the defendant to be released prior to his removal to the Eastern District of New York.

III. Conclusion

For the reasons set forth above, the government respectfully requests that the Court order the defendant Thomas Joseph Barrack be removed in custody to the Eastern District of New York.

Respectfully submitted,

JACQUELYN M. KASULIS
Acting United States Attorney

By:   /s/
Nathan D. Reilly
Ryan C. Harris
Samuel P. Nitze
Hiral D. Mehta
Assistant U.S. Attorneys
(718) 254-7000

6